UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMERICAN HOMELAND TITLE AGENCY, INC., JOHN YONAS, MARTIN RINK, | ) ) ) ) | |
| Plaintiffs, | ) | 1:15-cv-02059-SEB-DKL |
| | ) | |
| vs. | ) | |
| | ) | |
| STEPHEN W. ROBERTSON Commissioner, | ) ) | |
| | ) | |
| Defendant. | ) | |

**ORDER ON DEFENDANT'S MOTION TO DISMISS**

This matter is before us on Defendant Stephen W. Robertson's Motion to Dismiss [Dkt. No. 36] Plaintiff's Complaint.  For the following reasons, we DENY the Motion.

**Facts**

Plaintiffs American Homeland Title Agency, Inc., John Yonas, and Martin Rink have asserted claims against defendant Stephen W. Robertson in his individual capacity as well as in his official capacity as Commissioner of the Indiana Department of Insurance. Plaintiffs allege that Defendant has violated the Equal Protection and Commerce Clauses and request Declaratory Judgment and Permanent Injunction.

Plaintiff American Homeland Title Agency, Inc. ("American Homeland") is an Ohio Company with its principal place of business in Cincinnati, Ohio.  For more than ten years, American Homeland has provided title insurance, which is a contractual obligation between a real estate purchaser or lender and the title company.  [Compl. ¶¶ 9, 11.]  A title

insurer, such as American Homeland, conducts title searches, examining property records to confirm that the putative owner indeed owns the property.  [*Id.* ¶ 11.]  In doing so, American Homeland looks for outstanding mortgages, liens, judgments, unpaid taxes, restrictions, easements, leases, and any other issue that might impact free and clear ownership. [*Id.*]  American Homeland then ensures the legitimacy of a title by selling title insurance which protects against future losses resulting from defects of title.  [*Id.*]

The Indiana Department of Insurance ("IDOI") regulates title insurance companies doing business in Indiana.  [*Id*. ¶ 10.]  American Homeland alleges that Indiana's laws regarding the premiums that can be charged for title insurance sold to a consumer have "changed dramatically in the last couple of years."  [*Id.* ¶ 14.]  Specifically, American Homeland contends that as of July 1, 2013, all title insurance rates must be approved by the IDOI, whereas, in the past rates varied from agency to agency.  [*Id.*]

In January 2015, American Homeland was audited by the IDOI.  [*Id.* ¶ 16.]  The audit revealed that beginning in July, 2013, American Homeland engaged in conduct which constituted "minor violations" of Indiana title law.  [*Id.* ¶ 15.]  Between July 1, 2013 and August 17, 2014, American Homeland charged improper rates for policy endorsements. American Homeland was required to enter data into a database for the purpose of tracking real estate transactions, but admits that it fell behind on its data entry.  [*Id.*]  The State of Indiana imposes a $5 Title Insurance Enforcement Fund Fee, per transaction, which a title company is required to charge the consumer and remit to the insurance company.  [*Id.*] American Homeland paid the $5 fee out of its profits and did not collect the fee directly from consumers, thereby violating Indiana law.  [*Id.*]  According to American Homeland,

2

the auditor indicated that "it was 'obvious' that American Home[land] Title did not knowingly fail to comply with Indiana law." [*Id.*]

According to American Homeland, the IDOI told it in February 2015 that American Homeland could agree to reimburse consumers $42,202 and pay a fine in the amount of $70,082 for its violations of Indiana law. [*Id.* ¶ 20.] American Homeland alleges that it attempted to engage in settlement discussions with the IDOI, but was told it had somehow managed to insult Defendant Robertson, and that hiring an attorney would be harmful to the negotiations, likely resulting in a greater fine. Allegedly, the IDOI threatened American Homeland with a fine of $9.5M and individual fines against American Homeland employees in the amount of $10,000 each. Defendant Robertson required American Homeland to forfeit its Indiana license as a condition of settlement. [*Id.* ¶¶ 21-22.] On February 17, 2015, the auditor allegedly stated, "If you guys were not writing this business in Indiana, people in Indiana would be writing it." [*Id.* ¶ 29.]

American Homeland opted to settle with the IDOI, executing an Agreed Entry on March 20, 2015, which required American Homeland to pay a $70,082 fine and reimburse consumers $42,202, the original IDOI proposed remedy, and to consent to a permanent revocation of American Homeland's Indiana license, as well as the licenses of Plaintiffs Yonas and Rink. [*Id.* ¶¶ 23-24.] On March 20, 2015, Robertson, as Indiana Commissioner of Insurance, entered a Final Order on the Agreed Entry ("Agreed Order").

It is American Homeland's contention in this lawsuit that the IDOI and Robertson personally have been targeting out-of-state title agencies by aggressively and selectively enforcing Indiana laws in an effort to enhance Robertson's political profile and to protect

in-state Indiana businesses.  [*Id*. ¶¶ 28-29.]  American Homeland cites as examples:  press releases touting fines imposed on out-of-state companies, while not publicizing fines charged to in-state companies, and the IDOI stating that American Homeland's fines are "a perfect example of why out of state title companies shouldn't be handling Indiana deals." [*Id*. ¶ 29.]  The Complaint contains IDOI data evincing, says American Homeland, preferential treatment of Indiana insurance companies over their out-of-state competitors. For example, a majority of fines in excess of $10,000 are assessed against out-of-state companies [*id*. ¶ 31], a majority of enforcement actions are against out-of-state companies [*id*. ¶ 32], enforcement actions against out-of-state companies are for multiple violations, whereas enforcement actions against Indiana companies are limited to a single violation [*id*. ¶ 33], and when out-of-state companies fail to enter the requisite data on transactions, the fines charged against them are greater than those charged against in-state companies for similar violations [*id*. ¶ 34].

American Homeland complains that the penalty imposed by the IDOI against it was punitive and unduly harsh and has resulted in significant business loss, damage to its reputation and goodwill, and has essentially put American Homeland out of business in Indiana.  [*Id*. ¶¶ 25, 27.]  It suggests in its Complaint that other Cincinnati-area title companies have also been targeted for aggressive enforcement by the IDOI and those companies have voluntarily ceased doing business in Indiana out of fear that the IDOI will aggressively and selectively enforce Indiana laws against them.

The Complaint contains three counts: Violation of the Equal Protection and Commerce Clauses based on a violation of 42 U.S.C. § 1983 (Count I), Declaratory

4

Judgment (Count II), and Injunctive Relief (Count III).  Defendant moves to dismiss the Complaint on several theories, each discussed below.

## Standard of Review

The Federal Rules of Civil Procedure command courts to dismiss any suit over which they lack subject matter jurisdiction-whether acting on the motion of a party or *sua sponte.  See* Fed. R. Civ. P. 12(b)(1).  In ruling on a motion to dismiss under Rule 12(b)(1), we "must accept the complaint's well-pleaded factual allegations as true and draw reasonable inferences from those allegations in the plaintiff's favor."  *Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002) (citing *Transit Express, Inc. v. Ettinger,* 246 F.3d 1018, 1023 (7th Cir. 2001)).  We may, however, "properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists."  *Estate of Eiteljorg ex rel. Eiteljorg v. Eiteljorg,* 813 F. Supp. 2d 1069, 1074 (S.D. Ind. 2011); *Capitol Leasing Co. v. FDIC.,* 999 F.2d 188, 191 (7th Cir. 1993).

Defendants' 12(b)(6) Motion to Dismiss requires the Court to accept as true all well-pled factual allegations in the Complaint and draw all ensuing inferences in favor of the non-movant.  *Lake v. Neal*, 585 F.3d 1059, 1060 (7th Cir. 2009).  Nevertheless, the Amended Complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," and its "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007) (citations omitted).  The Complaint must therefore include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

5

544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2).  A facially plausible complaint is one which permits "the court to draw the reasonable inference that that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### Analysis

Our efforts here have been complicated by the parties' briefing which, to put it mildly, is disjointed, incomplete, and riddled with citation to inapplicable authority and/or mischaracterizations of the authority cited.  Even when the parties seemingly stumbled upon arguments that may have merit, their analysis is limited to a sentence or two and lacks sufficient legal citations for the court to rely on them in its attempt to issue a well-reasoned ruling.  It is not the court's obligation to make arguments for the parties.  *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 397 (7th Cir. 2000) ("[I]t is not this court's responsibility to research and construct the parties' arguments." (citing *United States v. Lanzotti*, 205 F.3d 951, 957 (7th Cir. 2000))).  We will address each issue to the extent possible; any arguments the parties attempted to raise, or simply alluded to, but that the Court is unable to grasp or otherwise address, are considered waived for the purposes of the pending motion.  *Kramer v. Banc of Am. Sec., LLC*, 355 F.3d 961, 964 n.1 (7th Cir. 2004) (citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991) ("We have repeatedly made clear that perfunctory and undeveloped arguments, and arguments that are unsupported by pertinent authority, are waived (even where those arguments raise constitutional issues).")).

1.     *Rooker-Feldman Doctrine.*

Defendant construes Plaintiffs' claim as one seeking only to invalidate an Order entered by the IDOI, which request would strip us of jurisdiction pursuant to the *Rooker-Feldman* doctrine.   The *Rooker-Feldman* doctrine, named after the Supreme Court's decisions in *Rooker v. Fidelity Trust Co.*[1] and *District of Columbia Court of Appeals v. Feldman,*[2] provides that the federal district courts must decline to entertain "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil, Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Kelley v. Med-1 Sols., LLC*, 548 F.3d 600, 603 (7th Cir. 2008).

The Agreed Order reflects the IDOI's approval of an Agreed Entry between the IDOI and American Homeland, Yonas, and Rink.  "The [*Rooker-Feldman*] doctrine has no application to judicial review of executive action, including determinations made by a state administrative agency."  *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002).  The Seventh Circuit has held that:

> Countless cases . . . allow people who lose in state administrative proceedings to seek relief in federal district court under civil rights legislation such as 42 U.S.C. § 1983; and *Patsy v. Board of Regents,* 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982), expressly rejected a requirement of exhausting administrative remedies before suing under that section.  We cannot believe that these cases were decided as they were simply because the defendants failed to argue *Rooker–Feldman*.  If the *Rooker–Feldman*

---

[1] 263 U.S. 413 (1923).

[2] 460 U.S. 462 (1983).

doctrine is to be extended to administrative judgments, it will have to be done by the Court that created it.

*Van Harken v. City of Chicago*, 103 F.3d 1346, 1349 (7th Cir. 1997).[3] *Verizon Maryland* and *Van Harken* teach that *Rooker-Feldman* does not apply to administrative orders. The order at issue is an administrative order with no accompanying state court judgment and, thus, *Rooker-Feldman* simply does not apply here. We therefore DENY Defendant's Motion to Dismiss on the ground that the *Rooker-Feldman* doctrine divests us of jurisdiction.[4]

## 2.      Estoppel/Agreed Order

We do not entirely understand Defendant's argument that "Plaintiffs' claims should be found to be precluded by the clear language of their Agreed Entry." [Dkt. No. 36 at 7.] Defendant's briefing asserts defenses of estoppel,[5] *res judicata*, waiver, and a failure to exhaust administrative remedies. It is quite possible that one of these theories might

---

[3] Defendant cites to two cases where the *Rooker-Feldman* doctrine divested the federal court of jurisdiction because the plaintiff in those cases sought to invalidate a state court dismissal order and a state court entry of an agreed order, respectively. *See 4901 Corp v. Town of Cicero*, 220 F.3d 522, 528 (7th Cir. 2000) (plaintiff sought to have the court set aside an agreed judgment); *Johnson v. Orr*, 551 F.3d 564, 567 (7th Cir. 2008) (order at issue was a state court's entry of an agreed order). Those cases, however, are inapposite because no state court judgment is at issue.

[4] Confusingly, Defendant relies on Indiana case law espousing the principle that consent judgments entered by a court should be enforced and have "preclusive effect." [Dkt. No. 36 at 7.] Defendant seemingly asks us to treat the Agreed Order from the IDOI as a consent judgment entered by a court of law without providing any authority to do so. We will not do so.

[5] Defendant also uses the term "equitable estoppel," which, of course, is a term of art having an entirely different meaning from what Defendant intends: "Equitable estoppel is a doctrine which precludes one party from asserting a claim or defense against another party who has detrimentally altered her position in reliance on the former's misrepresentation or failure to disclose a material fact." *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir. 1992). We see no reasonable application of "equitable estoppel" to the dispute between the parties or the motion before us.

provide a basis for a resolution of this case in Defendant's favor, but without more expansive and competent briefing, we cannot make that determination at this juncture.

In arguing for a dismissal on the basis of "estoppel," Defendant contends that the claims "are precluded by the clear language of their Agreed Entry."  [Dkt. No. 36 at 7-8 ("Because Plaintiffs voluntarily waived their right to proceed in State Court, where they could have addressed all of their claims, they are precluded from seeking relief from this Court."); Dkt. No. 50 at 1 ("Plaintiffs are now estopped from challenging [the] constitutionality" of the Final Order and defining "estoppel" and "equitable estoppel").] Defendant contends that Plaintiffs' "behavior" in consenting to the Agreed Order precludes them from challenging the constitutionality of the Agreed Order.  [Dkt. No. 50 at 1.]  Again, Defendant provides no controlling authority to support this argument.

In their Response, Plaintiffs open the door to the possibility that Defendant seeks to invoke *res judicata* as grounds of dismissal of the Complaint.  It is well-established that for *res judicata* to apply, the prior action must have resolved the same issue(s) litigated in the second action.  *See Indiana v. Washington (In re Washington)*, 547 B.R. 802, 805 (Bankr. N.D. Ind. 2016).  Here, the administrative action did not involve a claim brought pursuant to § 1983.  We are aware of no authority, and the parties provide us with none, that an agreed order in an administrative audit has preclusive effect in a federal case alleging constitutional violations by the agency.

Defendant's argument in the motion to dismiss could possibly be construed as a defense based on Plaintiffs' failure to exhaust their administrative remedies.  [Dkt. No. 36 at 8 ("Plaintiffs could have chosen to proceed with a full evidentiary hearing and judicial

9

review.  Instead, they chose to sign the Agreed Entry.").]  However, "it is well settled that exhaustion of administrative remedies is generally not a prerequisite to bringing an action under § 1983 in federal court."  *King ex rel. Jacob v. Sec'y, Ind. Family & Soc. Servs. Admin.*, No. 1:12-CV-312, 2013 WL 594094, at *3 (N.D. Ind. Feb. 15, 2013); *see also Porter v. Nussle*, 534 U.S. 516, 523 (2002) ("Ordinarily, plaintiffs pursuing civil rights claims under 42 U.S.C. § 1983 need not exhaust administrative remedies before filing suit in court."  An exception exists for prisoner suits alleging constitutional deprivations.).

The basis for Defendant's motion remains anything but clear; a motion to dismiss based on Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint and whether the facts, taken as true, state a claim upon which relief can be granted.  Defendant's "estoppel" argument does not identify a defect in Plaintiffs' Complaint, appearing instead to provide a possible basis for his affirmative defenses.  *See* Fed. R. Civ. P. 8(c)(1) (identifying "estoppel" as an affirmative defense).  "Orders under Rule 12(b)(6) are not appropriate responses to the invocation of defenses, for plaintiffs need not anticipate and attempt to plead around all potential defenses.  Complaints need not contain *any* information about defenses and may not be dismissed for that omission." *Xechem, Inc. v. Bristol-Myers Squibb Co.*, 372 F.3d 899, 901 (7th Cir. 2004); *see also Nat'l Found. for Special Needs Integrity, Inc. v. Reese*, No. 1:15-cv-545-TWP-DKL, 2016 WL 454805, at *3 (S.D. Ind. Feb. 5, 2016) (quoting *id.*).  "[O]nly when the plaintiff pleads itself out of court – that is, admits all the ingredients of an impenetrable defense – may a complaint that otherwise state a claim be dismissed under Rule 12(b)(6)."  *Xechem, Inc.*, 372 F.3d at 901.

Plaintiffs have not included in their allegations "the ingredients of an impenetrable [estoppel] defense," as required to warrant dismissal of their claims under Rule 12(b)(6). Accordingly, for all of the reasons explained above, we DENY Defendant's Motion to Dismiss based on the argument that Plaintiffs are estopped from seeking relief in light of the Agreed Order.

### 3.    Eleventh Amendment

Defendant argues that he is entitled to immunity from Plaintiffs' claims pursuant to the Eleventh Amendment because Plaintiffs agreed to the permanent revocation of their licenses and, as such, there can be no ongoing alleged violation of federal law.  By virtue of their voluntary agreement, Plaintiffs will not be doing business in Indiana and thus no prospective relief is available.  [Dkt. No. 50 at 4.][6]  Defendant's argument is not well-taken.

The Eleventh Amendment bars suits against state agencies and state officials. "[A]lthough not explicitly provided for in the text, 'the Eleventh Amendment guarantees that an 'unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State.'"  *Counsel 31 of the Am. Fed. of State, Cty. & Mun. Emps., ALF-CIO v. Quinn*, 680 F.3d 875, 881 (citation omitted).  "If properly raised, the amendment bars actions in federal court against a state, state agencies, or state officials acting in their official capacities."  *Id.* at 882 (citation omitted).  "The '*Ex parte*

---

[6] Defendant does not contend that the Eleventh Amendment bars Plaintiffs' claim against him in his individual capacity.

*Young* Doctrine' allows private parties to sue individual state officials for prospective relief to enjoin ongoing violations of federal law." *Id.*

The claims here fall well within the *Ex parte Young* exception to Eleventh Amendment immunity because Plaintiffs seek injunctive and declaratory relief in the form of vacating the penalties imposed by the Agreed Order and reinstating Plaintiffs' insurance licenses. [Compl. ¶¶ 62-63.] An injunction request for reinstatement of a license is prospective relief that clearly falls within the *Young* doctrine. *Tsirelman v. Daines*, 794 F.3d 310, 313-14 (2d Cir. 2015) (prayer for injunction requiring either reinstatement of medical license or hearing that comports with due process sought prospective relief within *Young* doctrine), *cert. denied*, 136 S. Ct. 811 (2016); *Pascarella v. Swift Transp. Co.*, 643 F. Supp. 2d 639, 648-49 (D.N.J. 2009) (reinstatement of drivers' licenses is "the type of injunctive, 'forward-looking' relief cognizable under *Ex parte Young*") (quoting *Kosolow v. f Pennsylvania*, 302 F.3d 161, 179 (3d Cir. 2002)).

The language of the Complaint seems to suggest that Plaintiffs are seeking prospective relief enjoining or prohibiting Robertson from enforcing the Agreed Order (presumably the monetary requirements) that resulted from the alleged constitutional violations and requiring him to reinstate their licenses. In a case such as this, where a plaintiff seeks prospective equitable relief, the Eleventh Amendment does not provide immunity. Accordingly, we find no merit in Defendant's Motion to Dismiss the Complaint based on Eleventh Amendment immunity.

**4.     Declaratory Relief and Injunctive Relief**

On the basis that Plaintiffs have a right to "equal access to compete in the title agency market in Indiana, as guaranteed by the Commerce Clause" and "to be free from discrimination on the basis of state residency as guaranteed by the Equal Protection Clause," they seek a "declaration that the Defendant has violated Commerce Clause [and Equal Protection] rights of the Plaintiffs" and an injunction "prohibiting Defendant in his official capacity from enforcing the March 20, 2015 Final Order" and enforcing the Indiana insurance laws in a manner that favors in-state companies."  [Compl. ¶¶ 57-58, 62-63.]

Defendant argues that because the Agreed Order is an enforceable contract between the parties according to which the parties agreed to settle their dispute(s) and allow their licenses to be revoked, "there is no threat of future action against them," which deprives them of an actual case or controversy as required by Article III of the U.S. Constitution. [Dkt. No. 36 at 10 (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).] Defendant invokes the *Lyons* case as support, but we fail to perceive how it is applicable here.  In *Lyons*, the plaintiff sought an injunction barring future use of chokeholds by police.  Because the plaintiff could not show that there was a real and immediate threat that he would be subjected to an illegal chokehold again, the court found that no case or controversy existed relative to the plaintiff's request for an injunction.

The situation here is not anything like *Lyons*.  Plaintiffs are seeking an injunction preventing the enforcement of the Agreed Order that requires their payment of fines and the permanent revocation of their insurance licenses.  That is clearly an actual case or controversy that provides a predicate for Plaintiffs' request for declaratory relief.

13

Defendant's Motion to Dismiss the request for a permanent injunction is denied on the grounds that Defendant's arguments are based entirely on the elements required to establish an entitlement to a *preliminary* injunction, which Plaintiffs have not requested in their Complaint.  [*See* Dkt. No. 36 at 10-12 (citing to factors such as "likelihood of success on the merits" and irreparable harm, as well, as harm to the public interest).]  Defendant makes no persuasive argument that Plaintiffs' request for a permanent injunctive relief fails to state a claim upon which relief can be granted.

Accordingly, we DENY Defendant's Motion to Dismiss Plaintiffs' requests for declaratory judgment and injunctive relief.

## 5.    Equal Protection

Defendant's Motion to Dismiss Plaintiffs' Equal Protection Claim is nearly unintelligible.[7]  It appears that Defendant believes only those in constitutionally protected classes, such as gender, race, or religion, have standing to bring an Equal Protection claim. [Dkt. No. 50 at 4-5.]  In asserting this as a basis for his motion to dismiss, Defendant confuses the level of scrutiny applicable to alleged violations of the Equal Protection Clause with the sufficiency of an Equal Protection claim.

The Supreme Court has held that the "Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the

---

[7] We note that the majority of Defendant's argument in support of his Motion to Dismiss Plaintiffs' Equal Protection Claim is, to the extent we understand it at all, more appropriately framed as a motion for summary judgment.  [*See* Dkt. No. 36 at 14.]  Defendant attacks Plaintiffs' "proof" as insufficient, seeking to require Plaintiffs to "prevail on [their] class of one claim," and urging us to conclude that the "Agreed Entry was more than fair under [the] circumstances."  [*Id.*]  We will not take the bait and will thus limit our analysis to the allegations of the Complaint taken as true.

equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted). When an Equal Protection claim relates to a protected class, such as race, the disparate treatment must satisfy a strict scrutiny review to overcome a constitutional challenge. This level of scrutiny is not a limitation on the breadth of the Equal Protection clause, but rather the lens through which such alleged violations are viewed.

The Equal Protection Clause forbids a state to discriminate in favor of its own residents solely by burdening the residents of other states. *Metropolitan Life Ins. Co. v. Ward*, 470 U.S. 869, 878 (1985) ("[W]ith respect to general tax burdens on business, 'the foreign corporation stands equal, and is to be classified with domestic corporations of the same kind.'" (citation omitted)); *Cecil v. Duck Head Apparel Co.*, 895 F. Supp. 155, 158 (W.D. Ky. 1995); *Moore v. Samuel Miller & Co.*, No. CIV. A. 87-G-0345-S, 1987 WL 342392, at *2 (N.D. Ala. Oct. 7, 1987) ("While holding an Alabama statute void which gave preferential treatment to Alabama corporations over foreign corporations wishing to conduct business in Alabama, the Supreme Court said: '[T]his Court always has held that the Equal Protection Clause forbids a State to discriminate in favor of its own residents solely by burdening 'the residents of other state members of our federation.'" (citation omitted)).

Plaintiffs have brought an Equal Protection claim by alleging that in-state title companies in Indiana were treated more favorably by Defendant than out-of-state title companies both in the number of violations for which they were cited as well as the amount

of fines assessed.  Moreover, Plaintiffs allege that based on conversations with auditors, Defendant's office, and IDOI press releases, the IDOI intentionally treated Plaintiffs different from in-state title companies simply because Plaintiffs are out-of-state companies. Finally, Plaintiffs allege that this distinction and disparate treatment has no rational basis. [Compl. ¶ 43.]

Defendant characterizes Plaintiffs' Equal Protection claim as a "class-of-one" claim in that it alleges that Plaintiffs suffered discrimination without regard to membership in any specific, identifiable group, such as based on race or gender.  *Enquist v. Oregon Dep't of Ag.*, 553 U.S. 591, 601 (2008).  In those circumstances, a plaintiff must show "(1) that he has been intentionally treated differently from others similarly situated, and (2) that there is no rational basis for the difference in treatment."  *Fares Pawn, LLC v. Ind. Dep't of Fin. Insts.*, 755 F.3d 839, 845 (7th Cir. 2014) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).  Although Plaintiffs object to this characterization of their Equal Protection claim as a "class-of-one" claim, even assuming Defendant is correct, Plaintiffs' Complaint survives his Motion to Dismiss.  Plaintiffs allege "not only that similarly situated group [sic] of Indiana title agents received preferential treatment, but also that there was discriminatory intent in the actions of the Defendant," and the difference in treatment lacks a rational basis.  [Dkt. No. 41 at 11; Compl. ¶ 43.][8]

---

[8] Defendant argues that a rational basis exists for fining Plaintiffs for their violations of Indiana law.  [Dkt. No. 36 at 14-15.]  Defendant's argument however, misses the point.  Plaintiffs' claim is not that they were treated unfairly by being fined.  Plaintiffs' argument is that they were treated unfairly by being an out-of-state title company and agents and Defendant is intentionally and with animus treating all out-of-state title companies more harshly as compared to in-state title companies.

Plaintiffs thus satisfy the pleading standards for an Equal Protection claim. The motion before to dismiss this claim for failure to state a claim upon which relief can be granted is DENIED.

## 6.     Commerce Clause

Plaintiffs allege that Defendant's actions in fining out-of-state insurers at a rate higher than in-state insurers violates the Dormant Commerce Clause. The United States Constitution allocates to Congress the power to "regulate Commerce . . . among the several States." U.S. Const. Art. I, § 8. Implicit in Congress's exclusive authority over interstate commerce is a restriction on states from intruding on that power. *See New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273 (1988). The Dormant Commerce Clause prohibits "regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors . . . Thus, state statutes that clearly discriminate against interstate commerce are routinely struck down . . . unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism . . . ." *Id.* at 273-74; *Midwest Title Loans, Inc. v. Ripley*, 616 F. Supp. 2d 897, 903 (S.D. Ind. 2009), *aff'd sub nom. Midwest Title Loans, Inc. v. Mills*, 593 F.3d 660 (7th Cir. 2010).

According to Defendant, "[b]ecause Plaintiffs freely entered into the Agreed Entry, they cannot claim that Defendant's acts affected their ability to engage in commerce with Indiana" and that Plaintiffs themselves are the source "of their present legal woes." [Dkt. No. 36 at 15.] Here Defendant reaches beyond the scope of a motion to dismiss, attempting to refute Plaintiffs' allegations by describing any such violations as minor and "nit-picky" by contending argues that because Plaintiffs violated the applicable regulations, they

cannot successfully bring a Commerce Clause claim.  [*Id*.]  Plaintiffs' allegations might be sufficient to allege a violation of the Dormant Commerce Clause; however, the McCarren-Ferguson Act complicates their claim.

In his Reply Brief consisting of a single paragraph, Defendant contends for the first time that the "McCarren-Ferguson Act 'declares' that 'regulation of the business of insurance belongs with the States, and to implement that declaration, the Act explicitly protects from a dormant Commerce Clause challenge (1) any state law that 'relates to the regulation of the business of insurance;' or  (2) any state law 'enacted for the purposes of regulating the business of insurance.'"  [Dkt. No. 50 at 6 (citing *Life Partners, Inc. v. Morrison*, 484 F.3d 284, 293 (4th Cir. 2007)).]  The McCarren-Ferguson Act provides: "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose or regulating the business of insurance, or which imposes a fee or tax upon such business."  15 U.S.C. §§ 1011, 1012.  "As the text itself makes clear, the point of McCarran-Ferguson's legislative choice of leaving insurance regulation generally to the States was to limit congressional preemption under the commerce power, whether dormant or exercised."  *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003).  The Supreme Court has set forth a three-part test to determine if an activity constitutes "the business of insurance":

> [T]he practice has the effect of transferring or spreading a policyholder's risk; second, whether the practice is an integral part of the policy relationship between the insurer and the insured; and third, whether the practice is limited to entities within the insurance industry.

*Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129 (1982).

Defendant makes no mention of the regulations at issue or whether these laws regulate the "business of insurance" as defined by the three-part test above. The entirety of Defendant's analysis of the McCarran-Ferguson Act's applicability to this case is this: "With that in mind, Plaintiffs cannot meet their burden to show that enforcement of Indiana's Title Insurance regulations violates the Commerce Clause." [Dkt. No. 50 at 6.] Defendant's argument is sparse in the extreme, and Plaintiffs have not had an opportunity to respond given that Defendant only first raised it in his Reply. Accordingly, we DENY WITHOUT PREJUDICE Defendant's Motion to Dismiss Plaintiffs' Commerce Clause claim at this time. Defendant shall have the right to file, within thirty (30) days, a second motion to dismiss that is limited to Plaintiffs' Commerce Clause claim under the McCarren-Ferguson Act. Defendant's second motion, if he chooses to file one, should fully explain his arguments that the McCarren-Ferguson Act bars Plaintiffs' Commerce Clause claim; Plaintiffs shall be afforded an opportunity to respond within fifteen (15) days thereafter.

## 7.   Personal Involvement

Defendant contends that Robertson lacks sufficient personal involvement to be held liable for a § 1983 violation. An individual cannot be held liable for a § 1983 violation unless he caused or participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000). No cause of action can be maintained under § 1983 against an individual acting in a mere supervisory role, rather, the law requires a defendant to personally participate in the conduct that causes a deprivation of a federal right. *Id.*; *see also Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009).

19

According to Defendant, the Complaint does not allege that Mr. Robertson was "directly involved in the negotiation of their settlement" with the IDOI and his only act was approving the Agreement Entry, which is insufficient to satisfy § 1983's "personal involvement" requirement.  [Dkt. No. 36 at 16.]  Plaintiffs rejoin that, as alleged in the Complaint, not only was Robertson responsible for the discriminatory enforcement of the Indiana laws, but he personally made the decision to approve and accept the Agreed Order. [Dkt. No. 41 at 14.]  Robertson ignores additional Complaint allegations that "Defendant Robertson required that American Homeland Title forfeit its Indiana license as a condition of any settlement" [Compl. ¶ 22] and that Defendant targeted out-of-state title agencies "to enhance the political profile of Robertson and protect in-state businesses" [*id.* ¶ 29].

At this stage of the proceedings, we assume these allegations are true, as we must. Thus, Plaintiffs have sufficiently alleged Robertson's personal involvement in the alleged constitutional deprivation to shape a § 1983 claim.  *See Titus v. Illinois Dept. of Transp.*, 828 F. Supp. 2d 957, 972 (N.D. Ill. 2011) ("Plaintiff has sufficiently alleged the personal involvement of [defendants] . . . in that they authored and/or signed his suspension orders."); *Daley v. Gorajec*, 2007 WL 2286132 (S.D. Ind. Aug. 7, 2007) (recognizing viable § 1983 claim against commissioner who made the decision to deny a license and signed the refusal of the license).  Defendant's Motion to Dismiss on the grounds that Robertson lacks the personal involvement necessary to plead a viable § 1983 claim is DENIED.

### 8.    Qualified Immunity

"[A] complaint is generally not dismissed under Rule 12(b)(6) on qualified immunity grounds." *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001) (citing *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000)). "Because an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: '[T]he plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity.'" *Id.* at 651 (citing *Jacobs*, 215 F.3d at 765 n.3). "As noted in *Jacobs*' concurrence, 'Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal . . . . and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint.'" *Id.* at 652 (citing *Jacobs*, 215 F.3d at 775 (Easterbrook, J., concurring)).

In any event, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012).  A qualified immunity analysis consists of two parts. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).  First, a determination of whether the facts alleged constitute a violation of a constitutional right.  *Id*.  Second, a determination of whether that constitutional right was "clearly established" at the time of defendant's alleged misconduct. *Id*.  Here, the parties again have given short shrift to their qualified immunity arguments, failing to identify with any specificity the applicable constitutional right at issue and lacking any explanation to show that such a right was clearly established at the time of the misconduct.

21

A plaintiff who is seeking to defeat a defendant's claim of qualified immunity bears the burden of proving that the underlying constitutional right was "clearly established." *Kroger v. Bryan*, 523 F.3d 789, 802 (7th Cir. 2008); *see also Estate of Escobedo v. Bender*, 600 F.3d 770, 779 (7th Cir. 2010). "A right is clearly established when, at the time of the challenged conduct, the contours of [the] right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 474 (7th Cir. 2011) (citations omitted). A plaintiff can demonstrate this by *either* "identifying a closely analogous case" *or* presenting evidence that the defendant's conduct was "patently violative of the constitutional right." *Id*. (citing *Estate of Escobedo*, 600 F.3d at 780) (emphasis added). Plaintiffs have done neither here.

The parties have both dropped the ball in analyzing the issue of qualified immunity. The entirety of Defendant's analysis and argument that qualified immunity applies here is as follows:

> In the instant case, Plaintiffs have presented no facts to establish that Defendant personally violated any clearly established law. Plaintiffs chose to sign an Agreed Entry rather than have a fact finding hearing on the issues they complain of in this matter. Defendant's official act, as agency head, incorporating their Agreed Entry into a final order does not constitute an act that could reasonably be known by Defendant to violate any clearly established law. Therefore, Defendant is immune from suit and this matter should be dismissed.

[Dkt. No. 36 at 18.] Not to be outdone, Plaintiffs' entire argument consists of two sentences, as follows:

> The Complaint, assuming all of the facts alleged are true, alleges the violations of two clearly established rights – both equal protection and the

> commerce clause. *See supra.* At no point does the Defendant suggest that the rights involved in this case are not "clearly established;" all of the Defendant's arguments are geared toward the suggestion that there was no violation. *See* Def. Memo. at 17-18 (referring to Agreed Entry).

[Dkt. No. 41 at 15.] The arguments advanced by the parties barely scratch the surface of a sufficient analysis of qualified immunity. Defendant misstates the real claim, to wit, that Defendant violated the Equal Protection and Commerce Clauses through intentional or purposeful discrimination to give in-state title agents an advantage over out-of-state title agents, and not that he signed an Agreed Order. Plaintiffs completely fail to show that a clearly-established constitutional right was violated, beyond pointing generally to the Equal Protection Clause and the Commerce Clause. *See Hinnen v. Kelly*, 992 F.2d 140, 142 (7th Cir. 1993) ("A clearly established right is one that is established in a particularized sense rather than a general one like the Fourth Amendment's right to be secure against unreasonable searches." (citations omitted)). Because we cannot make a reasoned ruling based on the parties' cursory and undeveloped argument, we send the issue of qualified immunity back to the parties for thorough, instructive briefing. Defendant may file a renewed Motion to Dismiss within thirty (30) days to which Plaintiffs may respond fifteen (15) days thereafter.

## 9.     Standing

Although neither party raises to the doctrine of standing as a potential stumbling block, a court is empowered, indeed required, to raise it *sua sponte. Gov't Suppliers Consol'g Servs., Inc. v. Bayh*, 734 F. Supp. 853, 857 (S.D. Ind. 1990) (citing *United States v. Storer Broadcasting Co.,* 351 U.S. 192, 197 (1956). "Standing under Article III of the

United States Constitution involves a tripartite test; a plaintiff needs to show (1) that it has suffered a distinct and palpable injury, (2) caused by the challenged activity, (3) for which the court can provide a remedy." *Id.* The concern we identify here is whether the court can provide a remedy for Plaintiffs' claims in light of the Agreed Order.

Although we are denying Defendant's Motion to Dismiss, the survival of Plaintiffs' claims is suspect. The parties have not fully explored the impact, if any, the Agreed Order has on Plaintiffs' rights and potential remedies. The Plaintiffs have *agreed* to pay a fine, *agreed* to refund customers amounts certain sums, and *agreed* to allow the permanent revocation of their licenses. There is a lack of explanatory allegations in the Complaint and in the Motion to Dismiss as to what relief we could award in light of the *Agreed Order*, even if Defendant is found to have violated the Equal Protection Clause and the Commerce Clause. Because we have a duty to raise *sua sponte* the issue of standing which Plaintiffs must ultimately prove, we ORDER Plaintiffs to file within thirty (30) days a statement explaining their standing to bring these claims. Defendant shall have fifteen (15) days thereafter to respond.

### Conclusion

For the foregoing reasons, we DENY Defendants' Motion to Dismiss. Plaintiffs shall file within thirty (30) days a statement explaining the basis for their standing to bring their claims, to which Defendant may respond within fifteen (15) days thereafter. As to Plaintiffs' Commerce Clause claim, Defendant may file, within thirty (30) days, a second Motion to Dismiss limited to the applicability of the McCarren-Ferguson Act. Plaintiffs shall have fifteen (15) days thereafter to respond. With respect to Defendant's qualified

immunity defense, Defendant may file a renewed Motion to Dismiss within thirty (30) days

to which Plaintiffs may respond within fifteen (15) days thereafter.

Date:  __9/30/2016__

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

25

Distribution:

Harry Kennard Bennett
ken@hkbennettlaw.com

Sara Marie McClammer
BENNETT & MCCLAMMER LLP
sara@bennettmcclammer.com

Joshua Adam Engel
ENGEL AND MARTIN LLC
engel@engelandmartin.com

Mary  Martin
ENGEL AND MARTIN LLC
martin@engelandmartin.com

Rebecca A. Brelage
INDIANA ATTORNEY GENERAL
rebecca.brelage@atg.in.gov

Caryn Nieman Szyper
OFFICE OF THE ATTORNEY
GENERAL
caryn.szyper@atg.in.gov

David A. Arthur
OFFICE OF THE ATTORNEY
GENERAL
David.Arthur@atg.in.gov
Melinda Jae Schwer
OFFICE OF THE ATTORNEY
GENERAL
melinda.schwer@atg.in.gov

Charissa Diane Payer
Ohio Attorney General - 2
150 East Gay Street
22nd Floor
Columbus, OH 43215